Julie R. Vacura, OSB #843692
jvacura@lvklaw.com
Benjamin Calleros, OSB #242124 (District Court Admission Pending)
bcalleros@lvklaw.com
LARKINS VACURA KAYSER LLP
121 SW Morrison St, Suite 700
Portland, OR 97204
Telephone: 503-222-4424

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| GRAY LOCAL MEDIA, INC., a Delaware corporation,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>SCHMIDT PROPERTY MANAGEMENT LLC, an Oregon Limited Liability Company,<br><br>　　　　　　Defendant. | Case No. 3:24-cv-1504<br><br>COMPLAINT FOR SPECIFIC PERFORMANCE, DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF |

## I.　　INTRODUCTION

1.　　Plaintiff Gray Local Media, Inc., fka Gray Media Group, Inc. ("Station") brings this action against Schmidt Property Management LLC ("SPM") (collectively, the "parties") for specific performance and injunctive and declaratory relief as to the parties' respective rights and obligations under that certain lease agreement dated August 22, 1981, as amended (the "Lease").

## II.     PARTIES

2.      Station is a Delaware Corporation with its principal place of business in Atlanta, Georgia. Station, a party to the Lease, is formerly known as Gray Media Group, Inc., successor-by-merger to KPTV-KPDX Broadcasting Corporation, successor-in-interest to Columbia River Television, Inc., formerly known as KLRK Broadcasting Corporation.

3.      SPM is an Oregon limited liability company with its principal place of business in Oregon. SPM, a party to the Lease, is the successor-in-interest to Martin Schmidt and Nancy Schmidt. On information and belief, all members of SPM are citizens of the State of Oregon.

## III.    JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs and, on information and belief, there is complete diversity between Station and SPM. Declaratory relief is sought pursuant to 28 U.S.C. §§ 2201(a) and 2202.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) because SPM is domiciled in Oregon.

## IV.    FACTUAL ALLEGATIONS

6.      On or about August 22, 1981, Station and SPM's predecessors entered into the Lease. Pursuant to the terms of the Lease and pertinent to this action, Station constructed improvements on real property SPM owns, located in Multnomah County, Oregon ("leased premises"). The improvements Station constructed include a broadcast television tower ("Tower") that Station operated pursuant to an antenna structure registration ("ASR") from the Federal Communications Commission ("FCC"). Also pursuant to the terms of the Lease, Station owned all improvements it constructed on the leased premises.

7. Pursuant to several Lease amendments and extensions, Station has operated the Tower on the leased premises for more than forty years. Station is obligated to comply with all applicable FCC rules and regulations as well as all applicable rules and regulations from the Federal Aviation Administration ("FAA"), including, among other things, that the Tower lights remain operational, which is a critical public safety issue.

8. Consistent with an amendment to the Lease dated October 18, 1982, Station, during the time of the Lease and for a reasonable period following expiration or termination thereof, possessed the right to remove from the leased premises the Tower and its antennas and transmitters ("associated equipment"). Similarly, upon termination or expiration of the Lease, SPM possessed the right to require Station to remove the Tower and all other associated equipment and return the leased premises to its original condition.

9. On or about February 20, 2023, with the then-existing lease term scheduled to expire on August 21, 2023, the parties again amended the Lease, supplemented by a "Side Letter" dated June 22, 2023, that set forth their respective rights and obligations regarding Lease termination. Pertinent hereto, the parties agreed that, rather than remove the Tower and associated equipment, Station would transfer ownership of the same to SPM.

10. To that end, the parties specifically agreed as follows:

- Station would pay SPM $500,000 for SPM to assume ownership of the Tower, associated equipment and any other improvements Station constructed on the leased premises;

- Station would engage a contractor, Electronics Research, Inc. ("ERI"), at Station's expense, to perform various repairs and maintenance on the Tower,

- including painting the Tower to industry standard, installing a new lighting system and repairing the "ice bridge";
- Station would engage other contractors, at its expense, to perform various maintenance on the leased premises, including repairing and paving the existing road;
- The parties agreed to accept the work that each contractor performed once the contractor provided a certification that the work contractor performed was completed to industry standard;
- Station would seek to amend its access easement from 60 feet in width to 40 feet in width;
- Upon the conclusion of the agreed-upon repairs and maintenance, the Lease would automatically terminate, at which time the parties' obligations under the Lease would automatically cease; and.
- Station would not be required to remove the Tower, associated equipment or any other improvements on the leased premises as ownership of the Tower, associated equipment and any other improvements on the leased premises, and responsibility therefor, would automatically transfer to SPM.

11. Consistent with the Lease amendments, Station engaged ERI and various other contractors that performed the contemplated maintenance and repairs and issued the required certificates of completion.

12. On August 19, 2024, Station provided full payment to SPM, along with copies of the contractor certificates of completion. Station further provided notice to SPM that, consistent with the terms of the Lease amendments, the Lease had terminated, and ownership of the Tower,

associated equipment and other improvements automatically transferred to SPM as of that same date.

13. On that same date, August 19, 2024, in a letter delivered to Station after it had sent its letter, SPM notified Station that it disagreed Station fully complied with the terms of the Lease. Namely, SPM took the position that the painting work was somehow "flawed," that the "ice bridge" was not completed and, most significantly, that SPM does not need to obtain an FCC Registration Number ("FRN") from the FCC to allow for the transfer of the ASR or take ownership of the Tower. SPM also contends, contrary to the terms of the Lease, that it was entitled to approve all contractors. Finally, again contrary to the terms of the Lease, SPM threatened to require Station, at its own expense, to remove the Tower, associated equipment and all other improvements from the leased premises.

14. Station has fully complied with the terms of the Lease. While the Lease did not entitle SPM to "approve" all contractors, it nevertheless approved the painting contractor. Beyond that, SPM has provided no substantive information as to any alleged deficiencies with the painting and there are none. Further, the ice bridge work has been completed.

15. SPM's refusal to acknowledge its ownership of the Tower and to seek an FRN from the FCC to allow for transfer of the ASR creates significant potential liabilities for Station, as well as a public safety issue. Unless and until the Tower is demolished or ownership transferred, Station remains the owner of record according to FCC and FAA records. Station cannot initiate a transfer of ownership of the Tower in the FCC records until SPM obtains an FRN.

16. Section 17 of the Lease provides that "[i]n the event suit or action is instituted to enforce any provision hereof, the prevailing party shall be entitled to recover from the other party such attorneys' fees as the trial court . . . deem reasonable."

17. Station has performed all its obligations under the Lease or they have been waived, discharged or otherwise satisfied.

18. Station is entitled to recovery of its attorney fees incurred in bringing this action.

## FIRST CLAIM FOR RELIEF

### (Specific Performance)

19. Station incorporates by reference its allegations above as if fully set forth herein.

20. Station has fully performed and complied with all obligations under the Lease, including, among other things, and in addition to the repair and maintenance work set forth above, payment of $500,000 to SPM for SPM to assume ownership of the Tower.

21. SPM has wrongfully refused to accept ownership and responsibility for the operation and maintenance of the Tower, depriving Station of the benefit of its bargain under the Lease.

22. To effectuate the purpose of the Lease, Station seeks an order directing SPM to take all appropriate steps to notify the appropriate agencies that it is the owner of the Tower, and further, to take all appropriate steps under State and Federal law to maintain, operate and monitor the Tower.

23. Station has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

### (Declaratory Judgment)

24. Station incorporates by reference its allegations above as if fully set forth herein.

25. Notwithstanding the terms of the Lease, SPM has failed and refused to take ownership of the Tower, including, but not limited to, taking the necessary steps to obtain an FRN from the FCC.

26. An actual controversy has arisen and now exists between the parties concerning their respective rights and duties under the Lease.

27. By virtue of the foregoing, Station seeks declaratory judgment as follows:

   (a) Station has fully complied with all obligations under the Lease;

   (b) The Lease automatically terminated on August 19, 2024;

   (c) Ownership of the Tower, associated equipment, and other improvements automatically transferred to SPM on August 19, 2024;

   (d) As of August 19, 2024, Station has no further obligations whatsoever with respect to the Lease and leased premises, including the Tower and other improvements;

   (e) As of August 19, 2024, SPM assumed any and all liability associated with ownership of the Tower and other improvements; and

   (f) SPM is obligated to obtain an FRN from the FCC, allow the transfer of the ASR and to immediately take all appropriate steps under State and Federal law to maintain, operate and monitor the Tower.

### THIRD CLAIM FOR RELIEF

**(Preliminary and Permanent Injunction)**

28. Station incorporates by reference its allegations above as if fully set forth herein.

29. Station has fully complied with the terms of the Lease, and ownership of the Tower has transferred to SPM. Station is being irrevocably harmed by SPM's failure to assume

liability for and control of the maintenance, operation, and monitoring of the Tower, due to the risks to public safety and Station's status as the Tower's "owner" of record per FCC records.

30. Station requests a preliminary and permanent injunction to enjoin SPM from a) acting inconsistently with the declaratory relief sought above; and b) breaching its contractual obligations. Station further requests a mandatory preliminary and permanent injunction ordering SPM to immediately take all appropriate steps under State and Federal law to maintain, operate and monitor the Tower, and to comply with all other obligations under the Lease.

WHEREFORE, Station prays for relief as follows:

1. That the Court declare that:

    (a) Station has fully complied with all obligations under the Lease;

    (b) The Lease automatically terminated on August 19, 2024;

    (c) Ownership of and liability for the tower, building, and other improvements automatically transferred to SPM on August 19, 2024;

    (d) As of August 19, 2024, Station has no further obligations whatsoever with respect to the Lease and leased premises, including the Tower, and other improvements;

    (e) SPM is obligated to obtain an FRN from the FCC, allow the transfer of the ASR and to immediately take all appropriate steps under State and Federal law to maintain, operate and monitor the Tower.

2. That the Court issue a mandatory preliminary and permanent injunction requiring SPM to obtain an FRN from the FCC and to take all appropriate steps under State and Federal law to maintain, operate and monitor the Tower and to comply with all obligations under the Lease.

3. That Station be awarded its attorney fees, taxable costs and disbursements, and a prevailing party fee; and

4. Such other and further relief as the Court may deem just and equitable.

Dated: September 7, 2024.

LARKINS VACURA KAYSER LLP

s/ Julie R. Vacura
Julie R. Vacura, OSB #843692
jvacura@lvklaw.com
Benjamin Calleros, OSB #242124 (District Court Admission Pending)
bcalleros@lvklaw.com

Attorneys for Plaintiff